UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20186-BLOOM(s)

UNITED STATES OF AMERICA

vs.

STEFAN ANDRES CORREA,

      **Defendant.**

_____/

**SENTENCING MEMORANDUM**

      The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this Memorandum in aid of sentencing Defendant Stefan Andres Correa. In consideration of all the § 3553(a) factors, the government submits that the only sentence that would be fair, just, and that would satisfy the goals of sentencing is life imprisonment, which reflects a <u>within</u> guideline recommendation. *See* PSI at ¶ 138.

**I. FACTUAL SUMMARY**

      Over a two-year period, the Defendant flew down to Colombia and paid approximately 50 minor children for sex, in many instances victimizing certain minor children on multiple occasions. These children were aged between 10 and 17 years old. The Defendant's crimes were unearthed following a border search of the nine devices that he was traveling with on the day was arrested and while he was enroute to sexually assault at least two more children believed by him to be under 12 years old.

      During the border search of the Defendant's devices, law enforcement discovered a chat between the Defendant and a child sex trafficker (the "Trafficker"). In that chat, the Defendant

made his intentions for traveling clear—he was traveling down to Medellin, Colombia, specifically to engage in commercial sex with children, a practice commonly known as "sex tourism."

In his communications with the Trafficker, the Defendant inquired as to the age of the girls that would be available for sex and the Trafficker confirmed that the children who were available for the Defendant were between the ages of 10-12 years old. At one point, the Defendant asked the Trafficker whether an 11-year-old girl ("Natalie"), who was later identified by law enforcement, would be ready for the "whole thing" and the Trafficker assured the Defendant that she would be. The Defendant also made clear he did not care whether the minor child "cried out" in pain and the Defendant requested "privacy" from the Trafficker while the Defendant engaged in the sex act with the child.

Later in the exchange, the Defendant asked the Trafficker whether another girl "Nati" was "still a virgin" and the Trafficker assured the Defendant that she was. The Defendant then inquired whether Nati could find other friends from her neighborhood or from school, who was about 10-11 years old that could come see him. In both instances, the Defendant stated he would pay both the minor and the Trafficker $300,000 Colombian pesos (approximately $75.00 U.S.D.) and would also provide the minor with an iPhone for the commercial sex act.

At one point, the Trafficker seemingly communicated with Nati and expressed that she was hesitant to meet with the Defendant to have sex and was concerned what he would be doing to her. The Defendant told the Trafficker he intended to penetrate Nati completely and ejaculate inside of her. The Defendant also urged the Trafficker not to interrupt, "no matter what happens." Upon the Trafficker telling the Defendant that Nati was hesitant to have sex for the first time, the Defendant told the Trafficker

> To be honest, I will penetrate completely, and I'll finish inside her. I don't want her to say "no" or "that's as far as you can go." She needs to understand that she needs me to enjoy myself without turning back. ***Even if she's a virgin and it hurts***, we're going to do it in different positions. I don't want to be rushed, I want to enjoy it and be able to repeat it, do you understand? ***She's not the first virgin that has cried to me***. The other girls open up, kissed me and took it for up to half an hour. ***I need her to understand, if she cries, I'm going to keep going***. Please don't interrupt, no matter what happens, ok? If all goes well, it can be an iPhone XS. Let me know what you think? We can kiss so she can understand how nice it'll be

In the chats, the Defendant and the Trafficker discussed a schedule of minor children for him to have sex with when he landed in Colombia, which included commercial sex dates with at least three minor children during the Defendant's four-day trip.

A search of the Defendant's luggage also revealed a handwritten letter entitled "I want this year 2023" and listed several "goals" the Defendant intended to accomplish. This included "many sexy, slim, young kitties for amazing sex whenever I want . . . ages 10-20" and listed the names of minor victims, many of whom were subsequently identified by law enforcement as children victimized by the Defendant in this case. A picture of the relevant portion of the letter appears below:



a. *The Border Search and the Post-Miranda Statement*

The Defendant gave a post-*Miranda* statement to law enforcement. He admitted to law enforcement that they would find a lot of "naked pictures" in his devices and that the girls featured in those pictures might be of minor children. When confronted with two videos of the Defendant

engaging in vaginal sex with two suspected minor girls, the Defendant also admitted that both girls were under the age of 15 years old. In attempting to excuse his conduct, the Defendant told law enforcement that the culture down in Colombia was different and implied that young girls were more sexually active there. The Defendant also readily admitted that he regularly engaged in commercial sex acts with minor girls in Colombia. The Defendant told law enforcement that the youngest girl that he had sex with was approximately 12 years old—however, the evidence in this case revealed the Defendant attempting to have sex with a minor as young as 10 years old.

### b. *Review of the Phones*

A review of the Defendant's nine devices revealed at least four of them had child sexual exploitation material on them, which consisted of videos that the Defendant created of himself having sex with approximately fifty different minor children. Several of the devices appeared to capture the same sex act from different angles, which became apparent once law enforcement had an opportunity to compare the metadata and the videos from each of the individual devices. In certain videos, the Defendant captured himself hiding the phones around the room prior to the minor child entering the room to engage in the commercial sex act and it was clear the minor child was not aware that she was being filmed. Most of the girls featured on the videos appear to be between the ages of 12-15 and many of the videos are over approximately thirty minutes in length.

Law enforcement also located numerous chats on various social media platforms or chatting applications, which demonstrated the Defendant contacting minor girls in Colombia to coordinate commercial sex dates with them during his travels. In certain chats, the Defendant stated his preference for children between the ages of 10-12 and requested that the minor children be virgins prior to his engaging in commercial sex with them.

    **c.** *Google Drive*

The search of the Defendant's devices also revealed that he appeared to have been saving several of the videos he produced to a Google Drive. Law enforcement executed a search warrant of the Defendant's Google Drive and discovered that the Defendant had created an organized gallery of videos featuring him having sex with the minor children and almost always saved the video into a folder titled with the minor's name and the age the Defendant believed she was. In many instances, the folders contained several video files from sexual encounters that occurred on different dates.

## II. LEGAL FRAMEWORK

The Court must fashion the appropriate sentence after considering the factors set forth in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines .... (5) any pertinent policy statement (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III. ARGUMENT

In considering an appropriate sentence, the government submits that virtually all the § 3553(a) factors support the government's within guideline sentencing recommendation of life imprisonment and intends to argue as such in more detail at sentencing. However, for the purpose of this memorandum, the government contends that life imprisonment is necessary to accomplish

5

the goals of sentencing and their need to convey the seriousness of the offense, afford adequate deterrence, protect the public and avoid unwarranted sentencing disparities.

### a. *A Sentence of Life Imprisonment is Needed to Convey the Seriousness of the Offense, Afford Adequate Deterrence and Protect the Public*.

First, the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the Defendant all support the imposition of a sentence of lifetime imprisonment. *See* 18 U.S.C. § 3553(a)(2)(a)-(c). The Defendant's conduct in this case was egregious. Just from the evidence the government has available to it, the Defendant engaged in commercial sex acts with minor children between the ages of 10 and 17, repeatedly, over a two-year period. To date, the government has identified over 50 minor girls who were victimized by the Defendant throughout the offense conduct. Ever proud of his preying on these minor victims, the Defendant also secretly recorded his sex acts with them and saved them to his private collection on his Google Drive.

Here, the Defendant's sex trafficking crimes are undoubtedly serious as Congress has made them punishable by at least 15 years' imprisonment with a maximum of life imprisonment. 18 U.S.C. § 1591(b)(1). Moreover, the fact that the Defendant captured and produced videos of each incident in which the Defendant sex trafficked his minor victim by secretly recording the sex acts with the minor also warrants the most significant sentence when considering that the Defendant victimized over 50 minor children, in many instances multiple times. Ignoring the sex trafficking penalties, the production of the child pornography videos that the Defendant produced must be punished by at least 15 years' imprisonment with a maximum of thirty years. A significant punishment would also be necessary if the Defendant victimized just one minor child, however, this is especially true in a case like the instant case where so many children fell prey to the

6

Defendant's conduct. The only way for the Court to protect the public from the Defendant engaging in additional predatory conduct is to sentence him to life imprisonment. What the Defendant's conduct makes clear is that the public, especially the most vulnerable among us, will not be safe if the Defendant is afforded a single day of his freedom.

When considering specific deterrence for this Defendant, the Defendant's own words in his "2023 Goals" make clear that he desires to have "amazing sex" with children "when [he] wants." The Court should not give the Defendant this opportunity to do so if afforded his freedom at any point during his lifetime. As it relates to general deterrence and given the egregiousness of the Defendant's conduct here, it is necessary for the Defendant's sentence to serve as a cautionary tale and dissuade likeminded predators from acting the same. It is the government's position that the factors in Section 3553(a) support the harshest sentence available in this case. When considering all these factors, the most significant sentence is needed to promote the goals of sentencing.

      **b.** *A Sentence of Life Imprisonment is Needed to Avoid Unwarranted Sentencing Disparities.*

Lastly, the Defendant's sentencing range and the need to avoid unwarranted sentence disparities also supports a life sentence. 18 U.S.C. § 3553(a)(4)(A), (6). As previously mentioned, the Defendant faces a mandatory-minimum period of 15 years' imprisonment with a maximum period of imprisonment of life. As contemplated in the PSI, his guideline range has been calculated as life imprisonment. PSI at ¶ 138. The government first notes that nothing in the record, and certainly none of the § 3553(a) factors, supports a downward variance to the guideline range when balancing the facts and circumstances of this case.

Moreover, when considering the seriousness of the offense, the government contends that only a lifetime sentence of imprisonment will adequately penalize the Defendant's conduct. While

the government struggled to find cases as vast in victims or large in scope as prolific as the Defendant's conduct here, in cases charging the same crimes and/or similar conduct courts have imposed significant multi-decade sentences to penalize such conduct, even where far fewer minors or victims were harmed. For example, in *United States v. Hamidullah*, 847 F. App'x 659 (11th Cir. 2021), the Eleventh Circuit upheld a 40-year sentence in a case with where the Defendant pled guilty to one count of sex trafficking by force, fraud, and coercion and related offenses for trafficking three women. *Id.* at 661. In *United States v. Gatlin*, No. 19-14969, 2024 WL 57459, at *15 (11th Cir. Jan. 5, 2024), the Eleventh Circuit upheld a <u>life sentence</u> for a defendant who trafficked a <u>single minor</u> that he also battered and engaged in sex acts with.

Lengthy sentences are also consistent with the significant sentences that are handed down in cases where far fewer children/people have been victimized. *See e.g. United States v. Fields*, 625 F. App'x 949 (11th Cir. 2015) (upholding a 405-month sentence where the defendant was convicted of sex trafficking multiple adults by providing them with addictive drugs); *United States v. Xavier Latrell Smith*, Case No. 23-cr-20122-BLOOM, ECF No. [291] (sentencing a defendant to 360 months of imprisonment for sex trafficking a single 17-year-old minor victim over several weeks); *United States v. Frantz Mersier*, Case No. 21-cr-60094-ALTMAN, ECF Nos. [74], [105] (sentenced to 235 months for sex trafficking a single 16-year-old minor victim over a 2-day period); *United States v. Cleon Kirlew*, Case No. 21-cr-60039-SINGHAL (sentenced to 312- months of imprisonment for sex trafficking a single 11-year-old victim over a one-month period); *United States v. Jason Wagner*, Case No. 22-cr-20124-ALTONAGA, ECF Nos. [233] (sentenced to 380 months of imprisonment for sex trafficking several adult and minor victims); *United States v. Oscar Williams, Jr.*, Case No. 20-cr-20248-GAYLES, ECF Nos. [117] (sentencing a defendant to 360 months of imprisonment in a production of child pornography case); *United States v.*

8

*Geilenfeld*, Case No. 24-cr-20008- LEIBOWITZ, ECF No. [163] (sentencing a defendant to 210 years of imprisonment related to the defendant's sexual abuse of ten minor victims under his care at a Haitian orphanage. The defendant in this case was charged under 18 U.S.C. § 2423, which carries a statutory maximum term of imprisonment of 30 years. The Court sentenced the defendant to 30 years of imprisonment for each count to run consecutively.).

Moreover, the sentence proposed by the government now is consistent with sentences contemplated for similar conduct in Florida State Court. Indeed, Florida law mandates that a person who commits a sexual battery for a victim under 12 shall be punished by a sentence of life imprisonment. *See* Fla. Stat. 794.011(2)(a) ("A person 18 years of age or older who commits sexual battery upon . . . a person less than 12 years of age commits a capital felony, punishable . . . [by] life imprisonment."). Here, the Defendant readily admitted to law enforcement that he had engaged in commercial sex with a minor as young as 12 years old, but the evidence revealed some of the minor children were as young as 10 years old when he paid them for sex.

While the Court cannot consider the sentence of other "similarly situated" defendants because the Defendant's conduct here was so unrivaled, the Court should consider these significant sentences as a baseline and sentence the Defendant accordingly to avoid unwarranted sentencing disparities.

[THIS SECTION LEFT INTENTIONALLY BLANK]

## IV. CONCLUSION

Considering the foregoing, the United States of America respectfully submits that a sentence of life imprisonment is needed to promote the goals of sentencing.

                        Respectfully submitted,

                        HAYDEN P. O'BYRNE
                        UNITED STATES ATTORNEY

By:  */s/ Lauren A. Astigarraga*
      Lauren A. Astigarraga
      Assistant United States Attorney
      FL Bar No. 0119473
      99 N.E. 4th Street
      Miami, FL 33132
      Telephone (305) 961-9105
      Lauren.Astigarraga@usdoj.gov